WHITNEY *vs.* ELMER.

In action by a father, to recover damages for the seduction of his daughter, evidence of a promise of marriage, made by the defendant to the daughter, previous to the seduction, is inadmissible.

If such evidence is offered in chief, by the plaintiff, and admitted as general evidence in the cause, without qualification or limitation, it is cause for reversal.

The judge instructed the jury that "if they found that the defendant promised to marry the plaintiff's daughter, before he had sexual intercourse with her, they were at liberty to consider that, with other circumstances attending her seduction; and they might also regard it as one of the circumstances of the case, in determining the damages to be recovered by the plaintiff, not for the purpose of giving damages for a breach of promise of marriage, but as one of the circumstances attending, and under which the seduction of the daughter was effected." The defendant's counsel excepted to this instruction, and requested the judge to instruct the jury that the plaintiff was not entitled to recover any additional damages on account of the promise of marriage; which request the judge refused. *Held* that the defendant was entitled to the instruction asked for, in view of the fact that evidence of a promise of marriage had been admitted, and of the ambiguous character of the instruction on that subject actually given.

APPEAL by the defendant from a judgment in favor of the plaintiff, entered upon the verdict of a jury. . The action was brought to recover damages for the

Whitney v. Elmer.

seduction of the plaintiff's daughter and servant.   On the trial the plaintiff gave evidence tending to prove, and from which the jury might find, that in the month of December, 1868, while Sarah Whitney, the plaintiff's daughter, was under twenty-one years of age, at the house of Seneca Wheeler, in Portageville, in the county of Wyoming, the defendant wrongfully seduced and carnally knew the said Sarah, who was, at the time of such seduction and carnal knowledge, the daughter and servant of the plaintiff; and that at the time of such seduction and carnal knowledge, the plaintiff resided at Attica, in said county, and the said Sarah was at the said house of the said Seneca Wheeler, visiting his family; that by reason of said carnal knowledge said Sarah became pregnant, and thereafter, and in December 1868, returned to her father's (the plaintiff's) house in Attica, where she remained until after the birth of the child with which she was so pregnant, and until the present time; that by reason of such pregnancy and the birth of said child, the said Sarah became and was sick, and to some extent unable to do or perform her duties to and for the plaintiff, as such daughter and servant; that by reason thereof the plaintiff necessarily expended some money, and he and his wife bestowed some time, care and attention upon said Sarah, incident to the birth of said child and in consequence of the sickness caused by said pregnancy and the birth of said child; that the defendant had been previously married, but his wife died in June 1867, and he was sole and unmarried from the death of said wife until after said seduction and carnal knowledge of said Sarah.

The plaintiff's counsel offered and proposed to prove, by the said Sarah Whitney, a witness for the plaintiff, that a short time previous to, and at and about the time of said carnal knowlege of the said Sarah by the defendant, the said defendant undertook and promised to marry the said Sarah Whitney, in view and consideration of her promise

to marry said defendant. The counsel for the defendant objected to the evidence, on the grounds that it was incompetent, and because this action was brought by the plaintiff to recover damages for, and in consequence of, the seduction of said Sarah, and evidence of a promise by the defendant to marry her, was not admissible in this action brought by the plaintiff, who is her father; and also on the grounds that the evidence so offered was immaterial, and there was no allegation of such fact in the complaint. The court overruled said objections and each of them, and decided that the evidence was admissible. To which ruling and decision the counsel for the defendant excepted. The plaintiff then proved, by the said Sarah, a promise made by the defendant to marry her, as stated and set forth in the offer so made by the plaintiff's counsel. Evidence was given, on the part of the defendant, tending to show, and from which the jury might find, that during the year 1867, and from that time until said carnal knowledge of her by the defendant, the general reputation and general character of the said Sarah as to chastity, was, in the neighborhood and community in which she then resided, bad. On the part of the plaintiff, evidence was given tending to show that prior to and up to the said carnal knowledge of said Sarah by the defendant, her general reputation and general character for chastity, in the neighborhood and community, was good. No specific act or acts of the said Sarah showing a want of chastity in her were proved, or attempted to be proved, by the defendant, on the trial, and no other evidence was given as to her chastity than as above stated. Evidence was given tending to prove that after the said seduction and carnal knowledge of the said Sarah the defendant married another person.

The court charged the jury that if they found for the plaintiff they should give him such damages as he had been subjected to by reason of the loss of his daughter's

Whitney *v.* Elmer.

services, the expenses he had been subjected to by reason of her sickness and confinement, and care and attention bestowed upon her, and the mortification and disgrace he experienced in consequence of her seduction and confinement, and in addition to those considerations, they had the right, if they deemed the case to be a proper one for that purpose, to add to such damages such further amount as they should deem to be proper by way of punishing the defendant, and as they might deem salutary and proper, by way of example and restraint upon others who might contemplate similar invasions of parental rights. That if they found that the defendant promised to marry the plaintiff's daughter before he had sexual intercourse with her, they were at liberty to consider that with the other circumstances attending her seduction; and they might also regard it as one of the circumstances of the case, in determining the damages to be recovered by the plaintiff, not for the purpose of giving damages for a breach of promise of marriage, but as one of the circumstances attending, and under which the seduction of his daughter was effected. The defendant's counsel excepted to that portion of the charge which directed the jury that they might consider the circumstance that the defendant promised to marry the plaintiff's daughter, in determining the damages the plaintiff should recover, if they found in his favor.

The counsel for the defendant requested the court to charge the jury that they should not consider the evidence of a promise made by the defendant to marry Sarah Whitney with the view of increasing the damages to be given to the plaintiff. The court refused so to charge. To which refusal the counsel for the defendant duly excepted.

The counsel for the defendant requested the court to charge the jury that if they should find that the defendant promised to marry Sarah Whitney, that fact should not

be taken into consideration by the jury with a view to increase the damages to be recovered by the plaintiff. The court refused so to charge the jury. To which refusal the counsel for the defendant excepted. The counsel for the defendant requested the court to charge the jury that if the jury should find that the defendant promised to marry Sarah Whitney, and that the defendant refused to perform, and broke that promise, that such refusal and breach of promise could not be taken into consideration by the jury with a view to enhance the damages to be recovered by the plaintiff in this action. The court refused so to charge. To which refusal the counsel for the defendant excepted.

The judge refused to charge the jury on the subject of the evidence given of a promise made by the defendant to marry said Sarah, or on the subject of the damages to be given by reason of such promise, otherwise than as charged by him as herein before stated, and declined to charge the above propositions, for that reason. To which refusal and decision the counsel for the defendant excepted.

The jury found a verdict in favor of the plaintiff, for one thousand dollars.

*B. Healy*, for the appellant.

I. The court erred in allowing the plaintiff to prove by Sarah Whitney that a short time prior to, and at and about the time of the carnal knowledge of said Sarah by the defendant, the defendant undertook and promised to marry said Sarah, in view and consideration of her promise to marry the defendant. This evidence was admitted generally in the cruse, and not limited to any particula purpose, and was inadmissible, for reasons stated unde the next point.

II. The court charged the jury "that if they foun that the defendant promised to marry the plaintiff's daugh

ter before he had sexual intercourse with her, they were at liberty to consider that with the other circumstances atteding her seduction ; and they might also. regard it as one of the circumstances in the case in determining the damages to be recovered by the plaintiff, not for the purpose of giving damages for a breach of promise of marriage, but as one of the circumstances attending, and under which the seduction of the daughter was effected." The defendant excepted to that part of the charge which directed the jury that they might consider the circumstance that the defendant promised to. marry the plaintiff's daughter, in determining the damages the plaintiff should recover, if they found in his favor.   The admission of this evidence, and the charge of the court, particularly that part to which the defendant excepted, were erroneous, as shown by the following authorities, and by the principles on which they were decided.   (*Gillet* v. *Mead,* 7 *Wend.* 193.   *Foster* v. *Scoffield,* 1 *John.* 297.   *Clark* v. *Fitch,* 2 *Wend.* 459–464.   *Wells* v. *Padgett,* 8 *Barb.* 323, 326, 327.   *Sedg. on Dam.* 544, 2d ed.   *Dodd* v. *Norris,* 3 *Camp.* 519.   3 *Phil. Ev.* 532, 4th *Am. ed.*   *Brownell* v. *McEwen,* 5 *Denio,* 367.)

In *Gillet* v. *Mead,* evidence was given, under objection, that previous to having carnal knowledge of the plaintiff's daughter, the defendant promised her marriage.   The judge allowed it to be given to prove the seduction, and to show that the intercourse between the parties was such as a prudent parent might have admitted, but not to lay the foundation for a recovery of damages for the breach of promise.   The judge charged the jury, that in assessing the damages of the plaintiff, they should have no reference to the promise of marriage, the remedy for the breach of which belonged only to the female, by action in her own name.   A verdict was rendered in favor of the plaintiff.   The court granted a new trial, because the judge at the trial erred in receiving evidence of a promise

of marriage. Savage, Ch. J., said: "In *Foster* v. *Scoffield*, (1 *John.* 299,) it was held improper. There the judge had instructed the jury that they might give damages for the seduction and also for breach of promise; here the jury was cautioned on that subject, but the evidence being before them, they might be influenced by it even against their own determination not to consider it; this case has been recognized as correct, 2 *Wend.* 464."

In *Clark* v. *Fitch*, on the trial the plaintiff offered to prove by the daughter, that previous to the improper intercourse between the defendant and her, the defendant had promised her marriage. This evidence was objected to and excluded. A verdict was rendered for the defendant. The Supreme Court held that this evidence was properly excluded, and on page 464, says: "He (the judge) correctly rejected the evidence of a promise of marriage."

In *Wells* v. *Padgett*, Mason, J., in giving the opinion of the court, says: "It is true, that in an action for seduction, by the parent, he is not allowed to prove the defendant's promise to marry his daughter, and thereby make such promise the basis of increasing the damages. There is a good reason for this. The parent is not a party to the contract which he seeks to make the basis of damages, and there is a party to it who has a right to claim all damages which have resulted from a breach of it; and consequently the law will not permit a parent to recover damages on account of the contract of marriage. The case is very different, however, when the female brings her action upon the contract."

In *Brownell* v. *McEwen*, the court says: "It is true.that it is inadmissible to prove that the defendant made the daughter a promise of marriage, with a view to enhance the damages in this action."

Sedgwick says, (*Sedg. on Dam.* 544, 2d ed.,) "so, also, it is well settled that in this action no evidence can be given

Whitney *v.* Elmer.

as to any promise of marriage, either with reference to the right of action or measure of damages; the remedy for the breach of that contract belonging to the female in her own name. Thus, in the king's bench, Lord Ellenborough said, 'the daughter may be asked whether the defendant paid his addresses in an honorable way; further than that you can on no account go.' So in New York, in such a case, it has been held incorrect to admit this description of evidence, whether the judge instructs the jury that they may give damages for the seduction and also for the breach of the promise, or whether he admits it only to prove the seduction, but not to enhance the damages."

In *Phillips on Evidence,* (vol, 3, p. 532, 4th Am. ed.,) it is said: "Proof of the defendant having given the daughter a promise of marriage, before he seduced her, is not admissible. The breach of such an engagement may be made the subject of another action; and it is an injury to the daughter, not to the parent."

If the plaintiff might give the promise of marriage in evidence to increase damages, it would seem to follow that the defendant should be permitted to prove an actual offer by him to marry the daughter, in mitigation of damages; yet such evidence is not admissible. (*Ingersoll* v. *Jones,* 5 Barb. 661.) In actions of slander and libel, the plaintiff may prove express malice, ill will or hostility on the part of the defendant towards the plaintiff, either to aggravate the damages, or to defeat the defense of privileged publication. (*Townsend on Slander and Libel,* § 392, and cases there cited. 2 Greenl. Ev. § 418. *Fry* v. *Bennett,* 28 N. Y. 328. *Kennedy* v. *Gifford,* 19 Wend. 296.) And for such purpose the plaintiff may prove the publication of the words alleged, or words of similar import, at other times, and on different occasions from those stated in the complaint, and he may prove any act or language of the defendant, not in itself actionable, tending

to prove malice on the part of the defendant in regard to the particular slander or libel which is the subject of the action. (*Fry* v. *Bennett*, 28 *N. Y.* 324. *Root* v. *Lowndes*, 6 *Hill*, 518.) But words which may be the subject of another action, cannot be given in evidence to show malice. (*Howard* v. *Sexton*, 4 *N. Y.* 157. *Root* v. *Lowndes*, 6 *Hill*, 518.) The language of the courts in the last two cases, is peculiarly applicable to this. In *Howard* v. *Sexton*, the action was slander. The court, on the trial, allowed the plaintiff to prove the speaking of defamatory words not contained in the declaration, as evidence of malice, to show with what mind the words laid in the declaration were spoken, and for no other purpose. In delivering the opinion of the court, Gardner, J., (among other things) said: "The evidence was admitted by the judge, 'to show with what mind the words stated in the declaration were spoken, and for no other purpose.' In other words, to prove express malice. As this was not essential to sustain the action, there could be no assignable reason for the admission of such testimony, except to aggravate the damages. And yet upon that question the learned judge, in effect, instructed the jury to disregard it. If they had regarded the ruling of the court, which is never done under such circumstances, the evidence was irrelevant, and should have been excluded." In *Root* v. *Lowndes*, the declaration contained three counts. After the plaintiff had proved the speaking of slanderous words at three different times, she was allowed to prove slanderous words spoken at other times, some of which were not laid in the declaration. The court, *per* Bronson, J., said: "To admit the proof of such words (those not laid in the declaration,) must be a surprise upon the defendant. It cannot be supposed that he will be prepared to try a matter of which the plaintiff has not complained. That is not all. If the plaintiff may prove the words, the defendant may justify as to those words; and thus the court and jury

Whitney *v.* Elmer.

will be led off from the point in controversy, as presented by the pleadings, into the trial of an indefinite number of collateral issues. But what is still worse, the plaintiff will be allowed to recover damages for an injury, when the recovery will not be a bar to another action for the same cause. I know it is said that the judge must tell the jury not to give damages for the words which are not laid in the declaration. But suppose he does give that instruction, everybody knows that it will have little or no effect. However honestly the jury may intend to follow the guidance of the court, it requires but a moderate acquaintance with the operations of the human mind to see that they will be misled by the introduction of such evidence. If after proving the words laid, imputing larceny, the plaintiff is allowed to prove other words imputing robbery or murder, it is past all doubt that the latter words, whatever the judge may say to the contrary, will influence the jury in fixing the quantum of damages. This has been admitted by those who have received such evidence. To tell the jury at one moment that the evidence is proper, and at the next that they must disregard it, involves a contradiction; and if the jury is composed of sensible men, they will either think lightly of the law, or of those who administer it. But whatever they may think, they will give damages for the words not laid; and thus the defendant may suffer a double punishment for the same fault. It is said that the proof is admissible to show the defendant's malice in speaking the words laid. But if those words are defamatory, malice is implied, and no extrinsic evidence of its existence can be necessary. And if the words laid are not defamatory, proof of express malice will not make them so."

With reference to the evidence of a promise of marriage, it may be said, as was said by Gardner, J., in *Howard* v. *Sexton,* "as this was not essential to sustain the action, there could be no assignable reason for the admission of

such testimony, except to aggravate the damages." The judge, by his charge, substantially instructed the jury that they might consider the promise of marriage not only as one of the circumstances attending the seduction of the plaintiff's daughter, but they might, in addition to that, also, regard it as one of the circumstances of the case in determining the damages to be recovered by the plaintiff. The jury were in effect told that after they had found that the defendant seduced the plaintiff's daughter, and after they had determined that the plaintiff was entitled to a verdict in his favor therefor, they might regard the contract of marriage, in fixing the amount of damages to be recovered by the plaintiff. The jury were, by this charge, authorized to assess against the defendant, damages to an unlimited amount, on account of the promise of marriage, and no one can know how much of the $1000 damages the jury gave in consequence of the promise. Notwithstanding nine-tenths of this verdict may have been given by reason of the promise of marriage, yet there is another party, who, in another action, may recover every farthing of damages arising from the promise or its breach, and whose right to damages is not in any way limited or affected by the recovery in this case. The jury were not informed that any one other than the plaintiff could recover on account of the promise of marriage, or its breach. The judge, in speaking of the damages to be recovered on account of the promise of marriage, in his charge, as stated, by way of parenthesis, says, " not for the purpose of giving damages for a breach of promise of marriage." The mere promise of marriage, without proof of its breach, could not be regarded for the purpose of giving damages for a breach of promise of marriage. The judge distinctly charged that the jury might regard (i. e., pay attention to; mark particularly; consider seriously; treat as something of peculiar importance, value or sanctity; see Webster's Dictionary,) the promise of marriage as one of the circum-

Whitney *v.* Elmer.

stances of the case in determining (i. e., in fixing the boundaries of; in setting bounds to; in ascertaining the quantity or amount of,) the damages to be recovered by the plaintiff. The jury having been allowed to increase the damages to an unlimited extent on account of the promise of marriage, the purpose of the jury in so doing was of little consequence to the defendant. Proof of the promise could not be of any service in the case for any purpose except to enhance the damages. As was substantially said by Bronson, J., in *Root* v. *Lowndes:* "If the defendant seduced the plaintiff's daughter, whereby she became pregnant, and the plaintiff lost her services, the cause of action was established, and evidence of a promise of marriage was wholly unnecessary. If the seduction, pregnancy, and consequent loss of service, were not proved, proof of a promise of marriage could not be of any conceivable importance."

If the defendant promised to marry the plaintiff's daughter, that fact would, in no legitimate way, tend to show that he had carnal knowledge of her, or that the plaintiff lost her services by reason of such knowledge. The female is entitled to recover all the damages arising from, or consequent upon, the promise of marriage. In *Wells* v. *Padgett*, (8 *Barb.* 323,) which was for breach of promise, it was held, that if the defendant's promise of marriage was made with a view to seduce the plaintiff, and the defendant by means of the promise, seduced her, the jury should consider the seduction in aggravation of the damages for the broken promise. This was the first case in this State presenting that question. In that case, Mason, J., in an able and elaborate opinion, presents the distinction between admitting evidence of seduction in an action for breach of promise, and admitting evidence of a promise of marriage in an action for seduction. Among other things, he says: "The objection that the parent has his action for the seduction, is equally untenable. The loss of service is the

gist of the action, when brought by the parent.   *   *   *
The child's loss of character, and dishonor and anguish,
and distress of mind, do not constitute the basis of the
parent's claim to damages.   The action for breach of mar-
riage promise is given to afford an indemnity to the mis-
used party for the temporal loss which the party has
sustained in not having the contract fulfilled; and this has
always been held to embrace the injury to the feelings
and affections, wounded pride, and the loss of marriage.
Now it seems to me that all of these things are greatly
aggravated where the seduction has been accomplished
under the false color of a marriage promise, and that here
is a proper field of damages in this action, which is un-
touched by the parent's action for seduction.   *   *   *   It
seems to me that here is a broad field for assessing dam-
ages, which the parent's action for seduction does not
reach, and which the law will allow the jury to occupy in
assessing damages, where the seduction has been accom-
plished through a fraudulent promise of marriage.   But
it is said that the law is settled in this state, that in an
action for seduction, by the parent, evidence that the de-
fendant had promised to marry the daughter was inadmis-
sible to enhance the damages, and that the converse should
be equally good.   It is true, that in an action for seduc-
tion, by the parent, he is not allowed to prove the defend-
ant's promise to marry his daughter, and thereby make
such promise the basis of increasing the damages.   *   *   *
There is a good reason for this.   The parent is not a party
to the contract which he seeks to make the basis of dam-
ages, and there is a party to it who has a right to claim all
damages which have resulted from a breach of it; and
consequently the law will not permit the parent to recover
damages on account of the contract of marriage."   This
opinion of Mason, J., was approved and followed in the
Court of Appeals, in *Kniffen* v. *McConnell*, (30 *N. Y.* 285.)
*Wells* v. *Padgett* and *Kniffen* v. *McConnell*, clearly show

Whitney. *v.* Elmer.

that Sarah, the plaintiff's daughter, may still recover all
the damages, on account of which the plaintiff has recov-
ered, by reason of the promise of the defendant to marry
the plaintiff's daughter, Sarah.   The recovery in this case
will not bar the right of Sarah to recover the second time,
the same damages, and for the same cause, for and upon
which the plaintiff was allowed to recover in this action;
and the defendant,. if this judgment is sustained, may be
required to pay the daughter, and also the father, the same
damages, for one and the same fault, and made to pay
double the amount of damages done.   The damages re-
covered in this action on account of the promise, were
precisely those which the court, in *Wells* v. *Padgett*, said
were " untouched by the parent's action of seduction,"
and " which the parent's action for seduction does not
reach."

Even if the judge had instructed the jury to wholly dis-
regard the evidence of a promise of marriage, in fixing the
damages, this would not have cured the error; because,
notwithstanding such instruction, the evidence might still
influence the verdict. (*Gillet* v. *Mead*, 7 *Wend.* 193.
*Howard* v. *Sexton*, 4 *N. Y.* 157.   *Root* v. *Lowndes*, 6 *Hill*,
519.   *Erben* v. *Lorillard*, 19 *N. Y.* 299, 302, 303.) The
first three of these cases illustrate and show what a jury
may reasonably be expected to do on the subject of dam-
ages, in such cases, if the evidence permits, despite any-
thing the judge may say in his charge. I have before
sufficiently referred to these cases on this point. In *Erben*
v. *Lorillard*, Grover, J., says: " The plaintiff's counsel in-
sists that this, if error, was cured by the charge. When
illegal evidence, properly excepted to, has been received
during the trial, it must be shown that the verdict was
not affected by it, or the judgment will be reversed. If
the evidence may have affected the verdict, the error can-
not be disregarded. The rights of parties can only be
preserved by adhering to this rule. It would be vain to

observe the rules prescribed by law to secure an impartial jury, if their minds are to be subjected to the influence of illegal evidence after they are impanneled. It does not follow that impressions thus obtained will have no effect, although the judge directs them to disregard the evidence. A juror is never made competent by the direction of the judge to disregard any opinion he had formed previous to taking his seat. Such direction has never been thought sufficient to protect a party from its effect. An opinion derived from illegal evidence upon the trial, would be equally prejudicial.

It is useless to conjecture what the effect of the evidence of the promise of marriage, or the charge of the judge thereon, may have been on the verdict. Both were erroneous.

III. The counsel for the defendant requested the court to charge the jury that they should not consider the evidence of a promise made by the defendant to marry Sarah Whitney, with the view of increasing the damages to be given to the plaintiff. The court refused so to charge, and the defendant excepted. This was error. It embraced an undeniable proposition, which had not been before charged, and should have been given to the jury.

IV. The counsel for the defendant requested the court to charge the jury, that if they should find that the defendant promised to marry Sarah Whitney, that fact should not be taken into consideration with a view to increase the damages to be recovered by the plaintiff. The court refused so to charge, and the defendant's counsel excepted to such refusal. This refusal was error.

V. The counsel for the defendant requested the court to charge the jury that if the jury should find that the defendant promised to marry said Sarah, and that the defendant refused to perform, and broke that promise, such refusal and breach of promise could not be taken into consideration by the jury, with a view to enhance the damages to

be recovered by the plaintiff in this action. The court refused so to charge the jury. To which refusal to charge the counsel for the defendant excepted. This refusal was error. Evidence was given, on the trial, showing that at the time of the promise of marriage, and from June 1867 until after the seduction and carnal knowledge of Sarah, the defendant was sole and unmarried. Evidence was also given tending to prove that after the seduction and carnal knowledge of said Sarah, by the defendant, the defendant broke his promise to marry Sarah, by marrying another person. This request was therefore founded upon evidence given in the case. The request squarely presented the distinct question, whether the father, in an action against the defendant, for the seduction of his daughter, can recover damage for the breach of a marriage contract, made by the defendant with the daughter; and the defendant was entitled to an unequivocal charge upon that point. The jury might, and would, regard the judge's refusal so to charge, as an instruction to them to give the father damages for the breach of promise. The judge had charged that the jury might consider the defendant's promise to marry the plaintiff's daughter with the other circumstances attending the seduction, and they might also regard it (the promise) as one of the circumstances of the case, in determining the damages to be recovered by the plaintiff, and incidentally said, "not for the purpose of giving damages for a breach of promise of marriage," &c. He did not inform the jury, by his charge, that they could not consider the evidence of a breach of the promise with the view to increase the damages. He in no way informed the jury what effect was to be given to the evidence of a breach of the promise, except by his refusal to charge as above stated.

VI. The judge refused to charge the jury on the subject of the evidence given of a promise made by the defendant to marry said Sarah, or on the subject of the

damages to be given by reason of such promise, otherwise than as charged by him as herein before stated, and declined to charge the above proposition for that reason. To which refusal and decision the counsel for the defendant excepted. This refusal was error. At the time the judge made this final decision, the counsel for the defendant was about to request him to charge the jury that if they should find that the defendant made the promise of marriage in good faith, and without any design or expectation that the promise should or would in any way contribute or lead to the seduction of said Sarah, and that such promise did not, in fact, in any way, induce or contribute to the accomplishment of her seduction, then, and in such case, the jury should not regard the fact of the promise of marriage, to enhance the damages to be recovered by the plaintiff. But after the judge had made and announced his decision, and the defendant had excepted thereto, further requests to charge upon the subject were useless, and might have been well regarded as disrespectful to the court. After the evidence of the promise was given, and after the judge's charge, and after the judge had, in the presence of the jury, refused to charge these several requests, it is not difficult to see the effect of the promise, and its breach, upon the verdict.

*H. Chalker*, for the respondent.

I. The promise of marriage is not of itself a cause of action in behalf of the daughter. There is no adjudged case where the point, whether the promise may be given in evidence to show which was the seducer, has been passed upon or examined. But all the intimations are in favor of such rule. On principle, there can be no ruling against it, for,

II. The having carnal intercourse with a daughter, does not of itself give the parent a cause of action; nor can he maintain the action where the daughter is the se-

ducer. It is only the seductive arts practiced that give the action.

III. How can that which was practiced by the defendant be shown to be a seductive art, but by showing what that thing was? If that thing was a promise, to exclude it is to exclude proof of the very gist of the action. It will be borne in mind that a breach of that promise is quite another thing, and is irrelevant to any seduction. It is held in many cases that there may be proof of "paying respectful attentions," (*cases cited in 5 Denio*, 368,) from which to infer a promise of marriage; then why not show the promise itself? To admit proof of the "respectful attentions," and exclude proof of a promise, is to prefer remote and equivocal testimony to the direct and certain. Again, Webster defines seduction to be "the act or crime of persuading a female to surrender her chastity," the "means leading astray," the "instrumentality to evil." Is it not, then, proper to show what was the act persuading, the means leading, the instrumentality? The act proved in this case was, simply, the promise of marriage, and not the breach of it. The defendant showed that, and the plaintiff is not responsible for that evidence.

IV. The rule is laid down in 2 *Wend.* 459, and sustained in banc, "that there could be no seduction without evidence of an intention to marry," and what better evidence than proof of the promise is possible? In 8 *Barb.* 325, the court says "the seduction" was "got by cheat." Is it not, then, competent to show what the cheat was, so that the jury may see which party was in the wrong?

V. To review the cases; all in this State are founded on 3 *Camp.* 519, and 3 *Wils.* 18, without examination, and certainly not to the point involved here. In 1 *John.* 297, the evidence was offered as a ground of damages, quoting 3 *Wils.* (*supra*,) and which distinguishes that case from the present. The objection there is, that for breach of the promise the daughter has a right of action. And another

objection, by *Kent,* is that the daughter is an interested witness to prove that promise. Now, here, the plaintiff showed no breach of promise, and the promise was shown, not as a ground of damages, but for another purpose; and the objection that the daughter is an interested witness, is now done away with by the Code. Those two are the only objections ever taken. The first, a breach of promise, was neither shown by the plaintiff, nor offered as a ground of damages, and the second is abolished by law. The case in 2 *Wend.* 459, quotes 1 *John.* without examination. In 7 *Wend.* 193, the proof was offered as a ground of damages, and therefore rightfully excluded, but the court there say there are many cases where the proof was admitted and the court refused to set aside the verdict. The case in 5 *Denio,* 367, rightly viewed, is in our favor, and here the court refused to set aside the verdict where such evidence was given. In 7 *Wend.* 193, the proof was offered as a ground of damages, and does not touch the present case, and there the court says that in many cases such has been given, and the courts have refused to set aside the verdicts.

VI. Now, that the daughter has a right of action for a breach of promise, has nothing to do with this case. The plaintiff here did not prove a breach of promise, and what he did show was but a part of a cause of action, for which the daughter may sue. That the daughter may use the same proof in an action by her, is not a valid objection; for when an action is brought by a master for beating his servant, *per quod servituim amisit,* evidence of the battery is proper, although the servant may use the same evidence in an action brought by him to recover damages for the assault and battery. Even in 8 *Barb.* 323, the action was by the daughter for a breach of promise, and the court held proof of a seduction admissible. *Vice versa,* when the parent brings the action for the seduction, may not the *promise,* to say nothing of the *breach* of it, be given.

Whitney *v.* Elmer.

VII. The court rightly charged the jury, and it is not to be presumed that the jury disobeyed the instructions, nor is there anything in the verdict to warrant the inference of such disobedience.

VIII. There is no reason to disturb this verdict. The progress of jurisprudence requires the above doctrine to be examined and settled on the rational basis.

*By the Court,* TALCOTT, J. This is action by the plaintiff for the seduction of his daughter and getting her with child. On the trial the plaintiff offered to prove by the daughter, as evidence in chief, " that a short time previous to, and about the time of, the said carnal knowledge of the said Sarah by the defendant, the said defendant undertook and promised to marry the said Sarah Whitney, in view and consideration of her promise to marry the defendant." This evidence was objected to by the defendant, was admitted, and an exception taken to the ruling.

It is perfectly well settled that evidence of a promise of marriage to the daughter is inadmissible in an action by the father. A moment's consideration of the theory upon which the action by the father is maintained, is sufficient to show the inadmissibility of the evidence objected to. The ground of the action by the father is the loss of service of the child by reason of the sickness and inability to labor induced by her pregnancy. It is manifest that whether there has been a promise of marriage, or not, is wholly immaterial to any question legally pertinent to the ground of the action, or the amount of damages sustained by the sickness.

The promise of marriage, and the breach of it, are the subjects of an action by the daughter. The promise is made to her, and, in judgment of law, for her benefit. As a chose in action, it is her sole property, in which the father has no legal interest. Of course there is manifest danger, if such evidence is allowed to be given in an

Whitney v. Elmer.

action by the father, that damages may be given in that action based to some extent upon the breach of the marriage promise. Although the moral guilt of such a transaction is very much enhanced, where advantage has been taken of the relations created by an engagement of marriage, to overcome the scruples of a virtuous female, followed by a repudiation of the contract, yet the guilty party is liable, in this as in all other cases of wrongs, to one recovery of damages in a civil action for the same act. The authorities are very clear in rejecting this species of evidence in the father's action. (*Sedg. on Damages*, 544, 2d ed. *Gillet* v. *Mead*, 7 *Wend.* 193. *Brownell* v. *McEwen*, 5 *Denio*, 367.)

It seems to be claimed by the counsel for the respondent, that the admission of the evidence in question was qualified by some special purpose to which its effect was limited. It is sufficient to say, in answer to this suggestion, that no such qualification is apparent in the case. According to the case, the evidence was offered in chief, by the plaintiff, and admitted as general evidence in the cause, without qualification or limitation. If it appeared that any position had been taken, or might have been taken, by the defendant, looking towards a mitigation of damages, upon the ground that the father, by neglect of the proper care and protection of his daughter, had recklessly exposed her virtue to temptation or assault, and thus in some measure contributed to the injury of which he complained, the fact of a pending engagement of marriage between the parties might have been admissible, under some circumstances, (*see Gillet* v. *Mead, supra,*) but no such foundation for the admission of the evidence appears in this case.

Moreover, it would seem as though the learned justice, at the trial, must have been understood as holding that the promise of marriage and the breach of it, which it appears was proved in the case, constituted a substantive

Whitney *v.* Elmer.

ground of damages. The case states that the court instructed the jury "that if they found that the defendant promised to marry the plaintiff's daughter before he had sexual intercourse with her, they were at liberty to consider that, with other circumstances attending her seduction; and they might also regard it as one of the circumstances of the case, in determining the damages to be recovered by the plaintiff, not for the purpose of giving damages for a breach of promise of marriage, but as one of the circumstances attending, and under which the seduction of the daughter was effected."

Now, on the case as presented to us, it does not appear how the jury were authorized to "regard it (the promise of marriage,) as one of the circumstances of the case in determining the damages to be recovered by the plaintiff." This instruction was excepted to, and the counsel for the defendant, presenting the idea in various forms in different requests, in substance, requested the judge to expressly instruct the jury that the plaintiff in this action was not entitled to recover therein any additional damages on account of the promise of marriage. These requests the court refused, and the defendant excepted.

We think the defendant was entitled to the instruction asked for, in view of the fact that the evidence of the promise of marriage had been admitted, and of the ambiguous character of the instruction on that subject actually given.

The judgment should be reversed and new trial ordered, costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 4, 1871. *Mullin,* P. J., and *Johnson* and *Talcott,* Justices.]